**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

HOWARD C. LAPENSOHN, *et al.*,
Plaintiffs,

v.

HUDSON CITY SAVINGS BANK, *et al.,*
Defendants.

Civil No. 2:20-cv-00680-JMG

**MEMORANDUM OPINION**

Plaintiffs allege that they suffered damages after a water pipe burst in their residence, a home from which they refused to vacate after foreclosure and ejectment proceedings were decided against them in state court. Plaintiffs contend that M&T Bank ("the bank"), which obtained insurance on the home as its legal owner, and the bank's insurer, Voyager, as well as Parker Ibrahim & Berg, the law firm which represented the bank in the state court actions against Plaintiffs, should pay for Plaintiffs' damages. The Court agrees with Defendants that Plaintiffs' claims are legally insufficient and, for the following reasons, **GRANTS** Defendants' Motions to Dismiss.

## I. FACTUAL BACKGROUND

The following facts[1] are alleged by Plaintiffs in their Complaint and are taken as true for the present purposes:

Plaintiffs, Howard and Jill Lapensohn moved into 1106 Robin Road in Gladwyne, Pennsylvania, on January 1, 2009, after receiving a Certificate of Occupancy on or about

[1] On a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

December 23, 2008. Compl. ¶¶1-2, at 2, ECF No. 1. The property "was subject to Construction financing from Independent Mortgage Company, who was paid by M&T's predecessor[2] prior to acquisition." *Id.* ¶3, at 2. Following a foreclosure complaint and ejectment action, M&T acquired ownership of the property via sheriff's sale on April 23, 2018. *Id.* ¶¶4-6, at 2-3. Plaintiffs are currently challenging the ejectment action in the Eastern District of Pennsylvania, at docket 2:19-cv-04576-CMR. *Id.* ¶7, at 3.

On January 19, 2020, Plaintiffs became aware that the basement at the property flooded. *Id.* ¶9, at 3. Plaintiffs' son shut the main water line on the property off and called a plumber. *Id.* ¶10, at 3. The plumber "reported a burst pipe and 12-18 inches of water, if not more, in the entire finished basement" as well as damage to the heating and domestic hot water systems. *Id.* ¶11, at 3. The plumber pumped out the water on Monday, January 20, 2020, and revealed significant water damage to the boiler and HVAC system. *Id.* ¶¶ 12-13, at 3. PECO confirmed the damage on January 26, 2020, and found that the boiler and heater were unsafe to operate, which Plaintiffs made known to M&T's insurance company. *Id.* ¶14, at 3; ¶30-31, at 5.

Plaintiffs contacted their attorney on January 19, 2020, and the attorney contacted the "Attorneys for the Mortgage Company"[3] who confirmed receipt of the notice on January 20, 2020. *Id.* ¶¶15-16, at 4. Plaintiffs allege that the "bank and bank's local real estate agent had full and complete knowledge that the Lapensohn family was continuing to occupy the property" but did not provide emergency contact information when the deed transferred to M&T Bank. *Id.* ¶17, at

[2] The Court takes judicial notice of the fact that M&T Bank merged with Defendant Hudson City Savings Bank on November 1, 2015, making M&T the successor by merger to Hudson City. *See* Berg Decl. at Ex. 3, ECF No. 11-3 (Merger Agm't). The Court will refer to both Hudson City and M&T as "the bank" or M&T for the purpose of this motion.

[3] The Court notes that these references to the "Mortgage Company's lawyers" refer to Defendant Parker, Ibrahim & Berg.

4. The "attorneys for the mortgage company . . . implied they would not be covering anything" on January 23, 2020. *Id.* ¶18, at 4. The damage included Plaintiffs' personal property/furniture in the basement and mold damage to the sheetrock walls. *Id.* ¶19, at 4.

Plaintiffs paid for the water to be pumped out of the basement, shut off the water and electricity, and moved to a hotel on January 25, 2020. *Id.* ¶20-21, at 4. Plaintiffs "initiated a claim with their insurance carrier for their personal property and removal of the same as covered by their occupant policy." *Id.* ¶22, at 4. The mortgage company provided information about their insurance company, Voyager,[4] on January 23, 2020. *Id.* ¶23, at 4.

Plaintiffs allege that Voyager's representative initially said there was no insurance on the property and then mentioned backdating a policy to cover the loss. *Id.* ¶¶23-24, at 4-5. Plaintiffs allege that the policy was backdated to December 1, 2019, and insured the house as a vacant property. *Id.* ¶25, at 5. Plaintiffs allege they did not receive a call back from Voyager so Plaintiffs asked their own insurer to "remove wet carpet and Sheetrock as well as to handle the mold remediation" at Mr. Lapensohn's expense. *Id.* ¶¶26-29, at 5. On January 27, 2020, Plaintiffs conversed with an insurance adjuster from Voyager via email and the adjuster advised that he was not coming to inspect the property and Plaintiffs were not permitted to make a claim because they "have no insurable interest in the property." *Id.* ¶32-35, at 6. Voyager's representative and its adjuster both did not provide the declaration page for the insurance policy to Plaintiffs despite Plaintiffs' request for it. *Id.* ¶¶ 36-37, at 6.

---

[4] Defendant Voyager Indemnity Insurance Company ("Voyager") was incorrectly identified as "Assurant Global P&C Claims" in the Complaint. On April 2, 2020, Plaintiffs and Voyager entered a stipulation to amend the case caption and references in Plaintiffs' Complaint to replace "Assurant Global P&C" with Voyager, which the Court ordered on the same day. *See* ECF No. 19.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The factual allegations must be sufficient to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"The court may use Plaintiff's memoranda opposing dismissal 'to clarify allegations in the complaint whose meaning is unclear.'" *Maio v. Aetna, Inc.*, 221 F.3d 472, 485 n.12 (3d Cir.2000) (citing *Pegram v. Hedrich*, 530 U.S. 211, 230 n.10 (2000)). Nonetheless, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988); *see also Hughes v. United Parcel Service, Inc.*, 639 Fed. App'x 99, 104 (3d Cir. 2016) (quoting *PepsiCo, Inc.*, 836 F.2d at 181) ("'It is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint.'").

Moreover, the court does not need to accept conclusory statements unsupported by facts as true. *Iqbal*, 556 U.S. at 686; *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998) ("we need not accept as true 'unsupported conclusions and unwarranted inferences.'"). The issue is not whether the plaintiff will prevail in the end, but whether the complaint rises to the level that is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). A court must "draw on its judicial experience and common sense" to make this context-specific determination. *Iqbal*, 556 U.S. at 686.

Courts sitting in diversity apply the substantive law of the state that governs the cause of action. *See Yurecka v. Zappala*, 472 F.3d 59, 62 (3d Cir. 2006). Federal law controls for procedural issues such as the particularity requirement of Rule 9(b). *See, e.g., Kee v. Zimmer*, 871 F. Supp. 2d 405, 412 (E.D. Pa. 2012).

Fraud allegations must "be stated with particularity" to meet the heightened pleading standard of Rule 9(b). Fed. R. Civ. P. 9(b). "To satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citation omitted).

## III. DISCUSSION

The Court dismisses with prejudice all counts in the Complaint for the reasons set forth herein.

### A. Count I "Common Law Fraud/Insurance Fraud"[5] against All Defendants is Dismissed for Failure to State a Claim.

Plaintiffs allege that Defendants engaged in fraud in their procurement of an insurance policy on the home, which accordingly did not cover Plaintiffs' losses. A plaintiff proves common law fraud by showing that the defendant made an intentional, material misrepresentation, with knowledge of the statement's falsity or recklessness as to its truth or falseness, on which the plaintiff justifiably relied, and that this reliance caused plaintiff's injuries. *Norfolk S. Ry. Co. v. Pittsburgh & W. Va. R.R.*, 870 F.3d 244, 255 (3d Cir. 2017) (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994) (enumerating elements of common law fraud under Pennsylvania law)). Here, Plaintiffs do not allege a misrepresentation made to them by any one of the Defendants, but rather

[5] Plaintiffs state that they "are not suing under Title 18 § 4117 of the PA Criminal Code" and the Court will not discuss the Insurance Fraud statute accordingly. Pls.' Opp'n at 2, ECF No. 18.

allege that M&T Bank and/or Parker, Ibrahim and Berg made misrepresentations to Voyager, the bank's insurer.

Plaintiffs contend that fraudulent misrepresentations need not be made directly to a plaintiff if the plaintiff's reliance on the misrepresentation is reasonably foreseeable. *See* Compl. ¶5 at 7, ECF No. 1 (citing *Woodward v. Dietrich*, 548 A.2d 301 (Pa. Super. Ct. 1988)). Plaintiffs rely on *Woodward*, where, incidentally, the alleged misrepresentation was made directly to the plaintiff. *Woodward*, 548 A.2d at 305. Moreover, the standard outlined in *Woodward* is that a plaintiff may recover under common law fraud if the plaintiff's reliance was 'specially foreseeable,' not reasonably foreseeable. *See Casper v. Drypoll, Inc.*, No. CIV. A. 88-7291, 1989 WL 68602, at *2 (E.D. Pa. June 21, 1989) (quoting *Woodward*, 548 A.2d at 309-11).

Specially foreseeable reliance expands the scope of liability from those strictly in privity to parties who would justifiably rely on a misrepresentation despite lack of privity with the speaker or when the misrepresentation was not made directly to them. *Woodward*, 548 A.2d at 309; *see also Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). In *Woodward*, the court found that a homeowner, in concealing the non-installation of a water sewage connection from a potential buyer, had a special reason to foresee that "any subsequent purchaser would be unaware of the material latent defect" that was originally concealed, and would purchase the home relying on the original misrepresentation even though it was not made directly to them. *Woodward*, 548 A.2d at 311.

Specially foreseeable reliance turns on whether the alleged misrepresentation was the proximate cause of plaintiff's harm. *See Kilbride Investments Ltd. v. Cushman & Wakefield of Pennsylvania, Inc.*, 294 F. Supp. 3d 369 (E.D. Pa. 2018); *see also Powell v. Drumheller*, 653 A.2d 619 (Pa. 1995). A proximate cause is one that was a "substantial factor in bringing about the harm."

*Powell*, 653 A.2d at 622. To be liable for an indirect fraudulent statement, the defendant must have made a misrepresentation to a third person "with the intent or a reason to expect that 'its terms will be repeated or its substance communicated [to the plaintiff], and that it will influence [the plaintiff's] conduct in the transaction or type of transaction involved.'" *CarSense, Inc. v. Amer. Special Risk, LLC*, 56 F. Supp. 3d 686, 695 (E.D. Pa. 2014) (quoting Restatement Second of Torts § 533).

In the instant case, Plaintiffs needed to plead that Defendants had reason to expect that their misrepresentation would reach Plaintiffs and that the alleged statements made by Defendants were the proximate cause of the harm Plaintiffs suffered. In other words, Plaintiffs needed to allege that Defendants would have had special reason to believe that making the alleged misrepresentation would lead to Plaintiffs' harm. Plaintiffs offer nothing in their Complaint to show this link. *See CarSense*, 56 F. Supp. 3d at 695 (dismissing fraudulent misrepresentation claim where plaintiff did not allege direct or indirect misrepresentation – plaintiff did not aver statement was made directly to plaintiff or that third party conveyed it for plaintiff to rely on).

It was not specially foreseeable[6] that Plaintiffs would incur damages and seek remuneration from the bank's insurance carrier after a water pipe burst in the home where Plaintiffs remained following foreclosure and after having a judgment for eviction entered against them.[7] Plaintiffs

[6] The Court notes that even if the test was whether Plaintiffs' reliance was "reasonably foreseeable," the allegations in the Complaint would still not meet this standard. Plaintiffs admit that they secured their own occupant insurance on the property, which is in direct contradiction to their claim that Defendants should have foreseen that Plaintiffs would rely on Defendants' obtaining insurance on their behalf, and belies that Plaintiffs did rely on Defendants to obtain insurance, regardless of who owned the home or whether the mortgage was still valid. *See* Compl. ¶22, at 1, ECF No. 1.

[7] As provided in their Complaint, Plaintiffs are currently contesting the state foreclosure and eviction orders pertaining to the property in this same court. This creates a situation where Plaintiffs plead here that Defendant Hudson City Savings Bank was required to insure the property

have not pled facts to support that the bank's alleged misrepresentation to Voyager that the property was vacant proximately caused the damage to the dwelling or the personal property damages claimed by Plaintiffs, nor that Plaintiffs justifiably relied on the alleged misrepresentation.[8]

Plaintiffs' argument about Voyager's reliance based on M&T's alleged negligent misrepresentation is similarly unavailing. *See* Pls.' Opp'n at 6-7, ECF No. 23. Plaintiffs do not allege damages to Voyager in the Complaint but even if they did, they would not have standing and could not recover for Voyager's damages from Voyager's reliance on the alleged misrepresentation.[9] *See* Compl. ¶¶ 11, a-c, at 8-9, ECF No. 1.

For the foregoing reasons, Plaintiffs have failed to state a claim for common law fraud and Count I is dismissed with prejudice. Plaintiffs do not request and will not be permitted to amend this claim, as amendment would be futile.[10]

---

because of its duty as the current property owner, while contending elsewhere in this same courthouse that Plaintiffs still own the property and the foreclosure was in error. Compl. ¶7 at 3, ECF No. 1; *see also Lapensohn et al v. Hudson City Savings Bank*, 2:19-cv-04576 (Marston, J.).

[8] Plaintiffs argue in their opposition that they "relied on the fact [M&T] had proper insurance coverage" not on the alleged misrepresentation. Pls.' Opp'n at 4, ECF No. 18.

[9] Plaintiffs argue that Voyager "obviously relied on [M&T's] statements" and "did no due diligence" to confirm if the property was vacant but those allegations are not contained in the Complaint. *See* Pls.' Opp'n at 7, ECF No. 23. Negligent misrepresentation requires that there be: (1) a misrepresentation of a material fact; (2) the *representor* must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result *to the party acting in justifiable reliance on the misrepresentation*. *Gibbs*, 647 A.2d at 889 (emphasis added).

[10] When requested, courts should freely give leave when justice so requires unless amendment will be futile, such as when a claim is legally insufficient on its face. *See Harris v. Steadman*, 160 F. Supp. 3d 814 (E.D. Pa. 2016). However, in civil cases, other than civil rights cases, courts need not provide plaintiffs the opportunity for *sua sponte* amendment after a motion to dismiss. *See*

**B. Count II "Breach of Contract and Bad Faith Pursuant to 42 PA.C.S. §8371" and Count IV "Breach of the Implied Covenant of Good Faith and Fair Dealing" against Voyager are Dismissed for Failure to State a Claim.**

Plaintiffs allege two causes of action against Voyager alone. The first is a claim for breach of contract and bad faith pursuant to 42 PA.C.S. §8731; the second is a claim for breach of the implied covenant of good faith and fair dealing. *See generally* Compl. Counts II, IV, ECF No. 1. These Counts, though stated individually, are in fact part and parcel of the same claim.

A plaintiff is not entitled to maintain an implied duty of good faith claim when the allegations are "identical to" a claim for "relief under an established cause of action" such as breach of contract. *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 92 (3d Cir. 2000) (citation omitted). "Whether expressed or implied, the covenant of good faith and fair dealing acts as a term of the contract, and that covenant arises from the contract itself." *Sherman v. State Farm Ins. Co.*, No. CV 17-4822, 2017 WL 5559911, at *3 (E.D. Pa. Nov. 17, 2017). Here, Plaintiffs have alleged the same cause of action twice, and the two merge as a result.[11] Therefore, the Court will only analyze Count II for its sufficiency, as it also encompasses the allegations in Count IV.

For a plaintiff to bring suit and recover under 42 PA.C.S. §8731, there must be an insurance policy where the plaintiff is either a party to the contract or a named insured. *Atiyeh v. Nat' l Fire Ins. Co. of Hartford*, No. 07-CV-04798, 2008 WL 4444253, at *9 (E.D. Pa. Sept. 30, 2008).

---

*Northeast Revenue Servs., LLC v. Maps Indeed, Inc.*, 685 Fed. App'x 96, 102-03 (3d Cir. 2017); *see also Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007) ("in ordinary civil litigation it is hardly error for a district court to enter final judgment after granting a rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to amend its complaint."). Plaintiffs did not request to amend any claims here.

[11] A breach of the implied covenant of good faith and fair dealing claim merges with a breach of contract claim when the former stems from the latter. *Meyer v. Cuna Mut. Grp*., No. CIV.A. 03-602, 2007 WL 2907276, at *14 (W.D. Pa. Sept. 28, 2007), *aff'd sub nom. Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154 (3d Cir. 2011).

"Recovery under Pennsylvania's bad faith statute is limited to insureds." *Banos v. State Farm Ins. Co.*, No. CIV. A. 07-2783, 2007 WL 2972600, at *2 (E.D. Pa. Oct. 10, 2007).

In the instant case, Plaintiffs are not parties to the insurance contract between M&T and Voyager. *See* Voyager's Mot. at 9 ("The only insurance policy at issue is M&T Bank's policy"). Plaintiffs also cannot claim to be third-party beneficiaries. "In order for a third party beneficiary to have standing to recover on a contract, both contracting parties must have expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself." *Atiyeh*, 2008 WL 4444253, at *9; *see also Scarpitti v. Weborg,* 609 A.2d 147, 149 (Pa. 1992). Plaintiffs do not allege facts indicating that they were intended to be third-party beneficiaries to the insurance claim.

Plaintiffs' Complaint does not contain sufficient facts to allege Plaintiffs were in privity with Voyager for the insurance contract. Therefore, Counts II and IV, breach of contract and implied covenant of good faith and fair dealing based on the insurance contract to which Plaintiffs are not a party or beneficiary, are dismissed with prejudice.

**C. Count III "Violation of the Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 PA.C.S. §201-1 Et Seq." against All Defendants is Dismissed for Failure to State a Claim.**

Plaintiffs allege that Defendants violated the UTPCPL by way of violating the Unfair Insurance Practices Act (UIPA). "Pennsylvania courts have repeatedly held that violations of other statutes may also be violations of the CPL." *Pekular v. Eich*, 513 A.2d 427, 432 (Pa. Super. Ct. 1986). Plaintiffs allege Defendants violated the UIPA by insuring the property as vacant and acting in bad faith by not paying out the claims to Plaintiffs. *See generally* Compl. Count III, ECF No. 1.

Under Pennsylvania law, the class of plaintiffs that may bring a private action under the UTPCPL is limited to those that purchase goods or services and incur an ascertainable loss arising

from unfair practices. *Baldston v. Medtronic Sofamor Danek, Inc.*, 152 F. Supp. 2d 772, 776 (E.D. Pa. 2001); *see also Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992). Given that Plaintiffs in the instant case do not allege they purchased the insurance policy, they are not entitled to relief under this claim.

Defendants also argue that regardless of Plaintiffs' standing to bring the claim, Plaintiffs have not successfully pled the elements of a UTPCPL claim. Plaintiffs must have justifiably relied on a misrepresentation and suffered an ascertainable loss as a result. *See* 73 P.S. § 201-9.2. "To state a claim under the UTPCPL, 'a plaintiff must show that [s]he justifiably relied on the defendant's wrongful conduct or representation and that [s]he suffered harm as a result of that reliance.'" *Singleton v. Jas Auto. LLC*, 378 F. Supp. 3d 334, 350 (E.D. Pa. 2019); *see also Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008). Plaintiffs do not provide any facts indicating their reliance, justifiable or otherwise, on any alleged misrepresentation causing them an ascertainable loss. Furthermore, as previously stated, no misrepresentations were made to Plaintiffs.

Plaintiffs have failed to plead sufficient facts to show they have standing to bring suit under the UTPCPL or to establish a cognizable claim under the UTPCPL. Accordingly, Count III is dismissed with prejudice.

**D. Count V "Negligence" against All Defendants is Dismissed for Failure to State a Claim.**

Plaintiffs allege Defendants' actions constituted negligence. *See generally* Compl. Count V, ECF No. 1. To succeed on a claim of negligence, Plaintiffs must establish (1) a duty or obligation recognized by the law; (2) defendant's breach of that duty; (3) a causal connection between the breach and the resulting injury; and (4) loss or damage suffered by the plaintiff. *Baker v. Solo Nightclub, LLC*, No. CIV. A. 11-2380, 2013 WL 1927052, at *4 (E.D. Pa. May 9, 2013).

If there was no duty, a claim for negligence cannot stand. *See Sacks v. Thomas Jefferson Univ. Hosp.*, 684 F. Supp. 858, 859 (E.D. Pa. 1988).

In the present case, Plaintiffs make conclusory allegations that Defendants owed a duty to Plaintiffs, which Defendants breached. Plaintiffs argue in opposition to the motion that Defendants were under a duty to "have proper homeowners insurance, which they failed to do…[because] the mortgage agreement that had been entered into clearly stated such insurance was required." Pls.' Opp'n at 4, ECF No 18. Plaintiffs did not make any such allegation in the Complaint, and it is therefore not before this Court.[12]

Nonetheless, Plaintiffs confuse a legal obligation allegedly contained in a *past* mortgage agreement with a current, legally cognizable duty without offering any law in support of the argument that the mortgage still controls. The doctrine of merger of judgments provides that "the terms of a mortgage are merged into a foreclosure judgment and thereafter no longer provide the basis for determining the obligations of the parties." *See Stenardo v. Fed. Nat'l Mortgage Ass'n*, 991 F.2d 1089, 1094-95 (3d Cir. 1993) (explaining that this merger acts to entitle the mortgagee post-judgment to the legal rate of interest rather than the rate specified in the mortgage because

[12] Plaintiffs referenced various exhibits in the Facts section of their Complaint but did not attach any exhibits to their Complaint. *See* Compl. ¶¶9, 14-15, 19, ECF No. 1. The references to specific language from the mortgage and the mortgage document appended to Plaintiffs' opposition to Voyager's motion are not properly pled in the Complaint. *See* Pls' Opp'n at 1-2 and Exhibit A, ECF No. 23; *PepsiCo, Inc.,* 836 F.2d at 181 (finding one cannot amend the complaint with briefs in opposition to a motion to dismiss). Nonetheless, a review of the mortgage also does not support Plaintiffs' contentions, as the only affirmative obligation to insure the property was placed on Plaintiffs and Defendants' option to supplement this insurance was contingent upon the Borrower's (Plaintiffs') failure to provide their own insurance. *See* Pls.' Opp'n Ex. A, ECF No. 23 ("If Borrower fails to maintain any of the coverages described above, Lender *may* obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage.") (emphasis added). Plaintiffs admit to having their own insurance in the Complaint, effectively negating this contingency option. *See* Compl. ¶22, at 1, ECF No. 1.

the terms of the mortgage "no longer exist to bind the parties."). Plaintiffs have not argued that the parties intended to preserve the effectiveness of any provisions of the mortgage post-judgment. *See, e.g., In Re Presque Isle Apartments*, 112 Bankr. 744, 747 (Bankr. W.D. Pa. 1990).

Critically, even if this alleged contractual duty was properly pled and the mortgage was still valid, Plaintiffs' tort claims should rightfully be dismissed under the gist of the action doctrine.[13] *See* Pls' Opp'ns, ECF No. 18 at 4; ECF No. 23 at 1-2. "Although the gist of the action doctrine "call[s] for a fact-intensive judgment as to the true nature of a claim," *Williams v. Hilton Grp. PLC*, 93 Fed. App'x. 384, 386 (3d Cir. 2004), whether the gist of the action doctrine applies in any particular setting is a question of law." *Alexander Mill Servs., LLC v. Bearing Distrib., Inc.*, No. 06-1116, 2007 WL 2907174, at *8 (W.D. Pa. Sep. 28, 2007).

Plaintiffs admit that their duty argument is made "murky"[14] in light of their parallel litigation proceedings. *See, supra*, n.7. However, "the general rule is that insurance coverage follows ownership of the property." *Tudor Square Assoc. v. Lexington Ins. Co.*, Civil Action No. 84-5489, 1988 WL 38344, at *3 (E.D. Pa. Apr. 22, 1988). The passage of title to property becomes legally operative upon the execution and delivery of a deed or conveyance. *See In Re Herbert's*

---

[13] "Even in the absence of an accompanying breach-of-contract claim, the gist-of-the action doctrine precludes a tort claim where the duties allegedly breached are intertwined with contractual obligations." *Kelly v. Wells Fargo Bank, N.A.*, CIVIL NO. 1:13-CV-02298, 2014 WL 3394737, at *5 (M.D. Pa. July 10, 2014). The duty plaintiffs allege, for defendants to maintain proper insurance on the property, arises out of an obligation written into the mortgage. *See Downs v. Andrews*, 639 Fed. App'x 816, 820 (3d Cir. 2016) (finding district court focused appropriately on the nature of the duty when it found that plaintiffs alleged defendants "violated an obligation created by contract, rather than by 'the larger societal policies embodied in the law of torts'") (citation omitted). *See also Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014) (finding identifying the duty breached "[is] the critical determinative factor in determining whether the claim is truly one in tort or for breach of contract.").

[14] *See* Pls' Opp'n at 4, ECF No. 18 ("Plaintiffs in this case purchased the house and the mortgage and the note required Defendant in this case to have insurance. While it is admitted the current position makes this murky . . . .").

*Estate*, 51 A.2d 753, 756 (Pa. 1947). Plaintiffs admit in the Complaint that regarding the home in question, "[t]he deed was transferred to M&T Bank . . . on April 23, 2018." Compl. ¶6, at 3, ECF No. 1. Thus, the Court finds that, at least for the purposes of this motion, M&T owned the title to the property starting on April 23, 2018.

The Complaint alleges that "[Defendants'] negligence resulted in the property being improperly insured, which means they failed their duty, and this failure did not confirm [sic] to the required standard. Further, there is clearly a connection between this intentional under-insurance in the property now not being properly insured." *Id.* ¶¶4-5, at 15. Even if Plaintiffs alleged facts showing that they may have their *own* insurable interest in the property because they continued use it as their primary residence after the foreclosure and eviction proceedings, they have not alleged facts sufficient to show that Defendants' independent obligation to provide insurance on their own property should result in the insurance proceeds from *Defendants' insurance* going to Plaintiffs. *See Hoggard v. Allstate Ins. Co.*, 2004 WL 887418, at *3-4 (E.D. Pa. Apr. 26, 2004) (finding that anyone who derives a benefit or advantage from the preservation of property has an insurable interest in the property and plaintiff did not lose his insurance coverage, which he renewed and paid for, on the property where he still resided after foreclosure).

However, Plaintiffs are not left without recourse. Plaintiffs stated that they were already able to make a claim to their *own* insurance company for personal property damages "as covered by their occupant policy" and have not alleged any obstruction to this claims process. *See* Compl. ¶22, at 1, ECF No. 1.[15]

[15] *But see* Pls.' Opp'n at 7, ECF No. 23 (arguing that Plaintiffs using their own insurance company for the damages "should never have had to occur" without any accompanying legal citation or argument in support).

Finally, under Pennsylvania law, there is no independent duty owed by mortgagees to mortgagors or by insurers to insureds beyond the mortgage or insurance contract signed by the parties. "Pennsylvania law follows the well recognized principle that a lender is not a fiduciary of the borrower." *See Temp-Way Corp. v. Continental Bank*, 139 B.R. 299, 318 (E.D. Pa. 1992) (citing *Grace v. Moll*, 132 A. 171, 171-72 (Pa. 1926)); *see also GE Capital Mortg. Servs., Inc. v. Pinnacle Mortg.*, 897 F. Supp. 854, 862 (E.D. Pa. 1995). And "insurers generally do not owe a fiduciary duty to their insureds." *Hayes v. Am. Int' l Grp.*, No. CIV.A. 09-2874, 2009 WL 4591531, at *6 (E.D. Pa. Nov. 30, 2009); *See Garvey v. Nat'l Grange Mut. Ins. Co.*, No. 95-0019, 1995 WL 115416, at *4 (E.D. Pa. Mar. 16, 1995) ("Despite creative attempts by the Plaintiff to turn the insurance contract into a fiduciary relationship, Plaintiff's complaint here alleges nothing more than a breach of contract based on good faith and fair dealing."). Regardless of whether Plaintiffs or M&T owed the home, Voyager would not owe any legal duty to Plaintiffs to maintain proper homeowner's insurance on the property.

The Court cannot draw any reasonable inference that Defendants breached a legally cognizable duty of care owed to Plaintiffs under Pennsylvania law. As such, the negligence claim, Count V, must fail as a matter of law, and is dismissed with prejudice accordingly.

**E. Count VI for M&T and Attorney Defendants, "*Respondeat Superior*," is Dismissed for Failure to State a Claim.**

Plaintiffs allege Parker, Ibrahim and Berg are also liable under the theory of *respondeat superior*, where an employer is responsible for the tortious actions of his employee, provided those acts were committed "during the course of and within the scope of the employment." *Kilbride Invs. Ltd. v. Cushman & Wakefield of Pa., Inc.*, 294 F. Supp. 3d 369 (E.D. Pa. 2018). Plaintiffs made conclusory allegations that Parker, Ibrahim and Berg committed negligence and/or insurance fraud acting as attorneys for M&T Bank. As the claims of fraud and negligence have been dismissed,

any claim here for vicarious liability under these theories also fails. Count VI is hereby dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motions to Dismiss Counts I through VI with prejudice. Plaintiffs' Complaint is dismissed with prejudice as to all Defendants. An appropriate Order follows.

DATED:

August 12, 2020

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge